USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 8/12/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUANDELL HICKMAN,

                Hickman,

v.

CITY OF NEW YORK,

                Defendant.

No. 20-CV-4699 (RA)(OTW)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

      Plaintiff Quandell Hickman, proceeding *pro se*, brings this action against Defendant the City of New York ("the City") pursuant to 42 U.S.C. § 1983 challenging the conditions of his pretrial detention at Rikers Island. He principally alleges that the facilities in which he was detained failed to adequately protect him from the COVID-19 pandemic during the spring of 2020 by not promoting social distancing, providing personal protective equipment, or segregating sick prisoners. Now before the Court is the motion to dismiss brought by the City on several grounds including failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Because the Court can determine from the face of the Complaint that Hickman failed to exhaust the administrative remedies that were available to him, it grants the motion to dismiss on that basis.

**BACKGROUND**

The following facts alleged in the Complaint are assumed to be true for the purposes of this motion.  *See, e.g., Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

From March 15 to April 15, 2020, Hickman was detained in the lower unit of the Anna M. Kross Center ("AMKC") on Rikers Island.  Compl. II.C.-D.  According to Hickman, social-distancing and face-covering requirements were violated during that period, and numerous symptomatic people were not moved from the housing unit.  *Id.* II.D.  When Hickman "became sick with COVID like symptoms," he was moved to the upper unit of the Eric M. Taylor Center ("EMTC") on Rikers Island, with other "COVID symptom patients."  *Id.*  During his time at EMTC, COVID-19 positive inmates served food, used the phones, and ate in the same areas "as negative inmates [such] as [him]self."  *Id.* No proper personal protective equipment was used during meal times.  *Id.*  When another inmate slipped and fell in the shower, Hickman helped him downstairs on a stretcher; that inmate was COVID-19 positive.  *Id.*  On or about April 24, 2020, when Hickman was transported back to AMKC, he was forced to share a van with another positive inmate.  *Id.*  As a result of this conduct, Hickman alleges, he suffered from COVID-19 symptoms, such as a swollen throat, cough, heavy breathing, and high fevers as well as back pain, back spasms, and emotional pain and suffering.  *Id.* III. Hickman alleges that he is at a high risk for COVID complications due to his medical history.  *Id.* V.

In the Complaint, Hickman acknowledges that he did not file any grievance at AMKC, instead calling 311, because AMKC was "short of staff."  *Id.* IV.F.  By contrast, Hickman attests that he grieved all of the events described in the Complaint at EMTC, yet no relief was granted.  *Id.* IV.E. He did not, however, take any steps to appeal that decision, except for calling 311.  *Id.*  Hickman also informed the AMKC Chaplain, security, and intake staff about his concerns, which apparently resulted in him moving back to the "12 upper" unit of the AMKC.  *Id.* IV.F.  COVID-19 positive inmates were, however, subsequently moved into that housing unit.  *Id.*

2

Hickman commenced this action on May 15, 2020. He asserts claims under 42 U.S.C. § 1983 against the City and asks the Court to release him from detention and grant him compensatory damages in the amount of $3 million. *Id.* V. On August 31, 2020, Hickman wrote to the Court indicating that his address has changed to an apartment in Manhattan. Dkt. 12. The Court subsequently referred the case to Magistrate Judge Wang for general pretrial purposes. Dkt. 18. The City moved to dismiss the Complaint on January 25, 2021, on the grounds that Hickman failed to state a claim of any constitutional violation and had failed to exhaust his administrative remedies before filing suit in federal court. Having received no response from Hickman by April 22, 2021, Judge Wang informed Hickman that if he failed to serve opposition papers by May 14, the Court would deem the motion unopposed. Hickman has not since filed any response.

## STANDARD OF REVIEW

A plaintiff's failure to respond to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) does not on its own warrant dismissal of the action. *See, e.g., McCall v. Pataki,* 232 F.3d 321, 322-23 (2d Cir. 2000). "Such motions assume the truth of a pleading's factual allegations and test only its legal sufficiency." *Id.* at 322. A complaint is legally sufficient if it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id*.

3

**DISCUSSION**

**I.      Failure to Exhaust**

Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 ..., or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA requires 'proper exhaustion' of administrative remedies, meaning exhaustion in 'compliance with an agency's deadlines and other critical procedural rules.'" *Lucente v. Cty. of Suffolk,* 980 F.3d 284, 311 (2d Cir. 2020) (quoting *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006)). Proper exhaustion means "using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford,* 548 U.S. at 90 (emphasis in original).

Failure to exhaust is an affirmative defense under the PLRA. *See, e.g., Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir. 2009). Consequently, a plaintiff need not plead administrative exhaustion in his complaint. As is the case with other affirmative defenses, however, "dismissal may be granted at the pleading stage for failure to exhaust if the defense 'appears on the face of the complaint.'" *Antrobus v. Warden of GRVC*, No. 11 CIV. 5128 JMF, 2012 WL 1900542, at *2 (S.D.N.Y. May 25, 2012) (quoting *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir. 1998)). Indeed, courts within this District routinely grant motions to dismiss where a plaintiff's non-exhaustion is clear from the face of the complaint. *See, e.g., Girodes v. City of New York*, No. 17 CIV. 6789 (RWS), 2018 WL 3597519, at *3 (S.D.N.Y. July 26, 2018); *Johnson v. Schriro*, No. 12 CIV. 7239 WHP, 2013 WL 5718474, at *4 (S.D.N.Y. Oct. 15, 2013); *Black v. Fischer*, No. 12 CIV. 2341 CM, 2013 WL 1314940, at *9 (S.D.N.Y. Mar. 28, 2013); *Antrobus*, 2012 WL 1900542, at *2; *Rivera v. Anna M. Kross Ctr.,* No. 10 CIV. 8696 RJH, 2012 WL 383941, at *2 (S.D.N.Y. Feb. 7, 2012); *Shaw v. City of New York,* No. 08–3997, 2009 WL 1110789 (SHS)(JCF), at *3 (S.D.N.Y. Apr. 21, 2009).

Here, the Complaint makes apparent that Hickman did not properly follow the available administrative grievance process, as required by the PLRA. As an initial matter, Hickman acknowledges that he did not file any grievance at AMKC. Compl. IV.F ("I didn't file in AMKC short of staff called 311 and spoke to captains and refused all symptomatic houses.") *Id.* The mere contention that AMKC was "short of staff" does not permit the Court to reasonably infer that administrative remedies were effectively unavailable to Hickman, so as to exempt him from the exhaustion requirement. *See Lucente,* 980 F.3d at 311-12 ("'[T]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available.'" (quoting *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004)); *Antrobus*, 2012 WL 1900542, at *3 (dismissing complaint for non-exhaustion where "no special circumstances [were] alleged, plausible or otherwise, that would justify [plaintiff's] failure to comply" with the grievance procedures at Rikers Island). Hickman does not explain why the alleged staffing shortages prevented him from submitting a complaint to prison officials, particularly when he was able to "speak with captains" about the challenged conditions. *See* Compl. IV.F. In short, Hickman's vague contentions and/or assumptions do not suffice to demonstrate that the grievance process was unavailable to him. All claims challenging the conditions at AKMC must therefore be dismissed for non-exhaustion.

It is similarly apparent from the face of the Complaint that Hickman failed to exhaust the remedies available to him at the EMTC. At Rikers Island, grievance procedures are governed by the Inmate Grievance and Request Program ("IGRP"). *See, e.g., Girodes*, 2018 WL 3597519, at *3. The IGRP involves four steps: 1) submission of a complaint for informal resolution; 2) in the event an informal resolution is not reached within five days, request of a formal hearing; 3) appeal to the commanding officer; and 4) appeal to the Central Office Review Committee. *See, e.g., Pizarro v. Ponte*, No. 17 CIV. 4412 (LGS), 2019 WL 568875, at *4 (S.D.N.Y. Feb. 11, 2019); *see also Myers*

*v. City of New York*, No. 11 CIV. 8525 PAE, 2012 WL 3776707, at *4 & n.6 (S.D.N.Y. Aug. 29, 2012) (taking "judicial notice of the IGRP, as courts in this Circuit regularly do"), *aff'd,* 529 F. App'x 105 (2d Cir. 2013). "The inmate must take each of the four steps to exhaust the administrative grievance process." *Sanders v. City of New York*, No. 16 CIV. 7426 (PGG), 2018 WL 3117508, at *4 (S.D.N.Y. June 25, 2018).

With respect to EMTC, Hickman attests that he grieved "all" relevant claims, and "even called 311." Compl. IV.E. That allegation satisfies the first step of the IGRP process, at least for purposes of this motion. Yet Hickman also alleges that "the result, if any," of these grievances was "none." *Id*. That Hickman opted not to further engage the process, as evidenced by his apparent failure to appeal the denial of his initial grievances, requires a finding of non-exhaustion. "[I]f an inmate can appeal an adverse ruling, he must do so to exhaust the available procedures." *Antrobus*, 2012 WL 1900542, at *2 (citing *Woodford,* 548 U.S. at 90). Here, when answering "What steps, if any, did you take to appeal that decision [as to a grievance]? Describe all efforts to appeal to the highest level of the grievance progress"—a question that appears on the standard form for prisoners bringing complaints pursuant to § 1983—Hickman responded only "I called 311." Compl. E.3. From the face of the Complaint, it is thus clear that Hickman did not complete either of the final three steps of the IGRP. His statement "is less a description of the steps [he] took to appeal the decision than it is a concession that he did not attempt to appeal the decision at all." *Antrobus*, 2012 WL 1900542, at *3. His claims must therefore be dismissed for failure to exhaust. *See Rivera*, 2012 WL 383941, at *5 (stating that "courts in this Circuit have repeatedly held that a prisoner in custody of the New York City Department of Corrections who has not received a response to a grievance but has not requested a hearing has not exhausted his administrative remedies for purposes of the PLRA").

6

**II.     Leave to Amend**

Pursuant to Fed. R. Civ. P. 15(a)(2), a court should freely grant leave to amend "when justice so requires." *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (describing the standard set forth in Rule 15 as "permissive").  Moreover, "[a] *pro se* complaint should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks omitted).

Because failure to exhaust administrative remedies "is often a temporary, curable procedural flaw," the Second Circuit has recognized that dismissal without prejudice is often appropriate where the prisoner can "cure the defect simply by exhausting [his remedies] and then reinstituting his suit." *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (internal quotation marks omitted).  Here, by contrast, Hickman is no longer in state custody, *see* Dkt. 12 (noting change of address to private residence in Manhattan), and therefore can no longer avail himself of the required administrative remedies.  In such a case—in which "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust"—dismissal with prejudice is proper.  *Berry,* 366 F.3d at 88.  Accordingly, Hickman's complaint should be dismissed with prejudice.

## CONCLUSION

Because Hickman failed to exhaust the administrative remedies available to him at Rikers Island, as required by the PLRA, the City's motion to dismiss is granted on that basis. The Court need not evaluate whether the Complaint otherwise plausibly alleges a violation of Hickman's constitutional rights or that such a violation was caused by a municipal policy or custom, as required to establish the City's liability. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated:   August 12, 2021
         New York, New York

                                      Ronnie Abrams
                                      United States District Judge